## OCTOBER TERM, 1856.

## T. C. B. ROOKE vs. C. H. NICHOLSON.

The Court held that the Act of May 2d, 1856, confiding the settlement of disputes respecting private ways to local Boards of Commissioners, is not in conflict with the 6th Article of the Constitution, which secures the right of trial by jury "in all cases in which it has been heretofore used in this Kingdom."

The continuous and unmolested use of a way since the year 1841, was held sufficient to create a right of way by prescription.

The decision of the Court was delivered by JUDGE ROBERTSON.

This case comes before us on appeal from a decision of the Commissioners of Private Ways for this district, rendered by them against the defendant, on the 3d day of September last.

It is contended by counsel for the appellant that the facts involved in this controversy ought to be submitted to a jury, and that the court cannot adjudicate upon the case in *Banco*, as provided by the Act of May 2d, 1856. The learned counsel argues too, that the main provision of that Act, which declares that all controversies respecting private rights of way, shall be heard and determined by three commissioners, to be appointed for each election district, is unconstitutional, being in conflict with the 6th Article of the Constitution, which reads as follows: "The right of trial by jury, in all cases in which it has been heretofore used in this kingdom, shall remain inviolate forever." And he claims that under Section 4th of the "Law for the regulation of Courts," passed at Lahaina in 1842, being chapter 47 of the old laws, which provides for a trial by jury in civil cases, "If the amount of property involved in a dispute exceed a hundred dollars," upon a deposit of one hundred dollars in court by the complainant, defendant is entitled to a jury trial, because that provision was in force at the time of the adoption of the Constitution in 1852.

So far as the defendant's claim to have this case submitted to a jury, is predicated on the fourth Section of Chapter 47 of the old laws, it must fall to the ground, because that entire chapter was repealed in the year 1847, and all its provisions superseded by those of the "Act to organize the Judiciary Department."

Upon the question raised under the 6th article of the Constitution, we would remark, in the first place, that we are clearly of the opinion that the provision therein contained, forming as it does a part of the Declaration of Rights, which may not inaptly, perhaps, be termed a preface to the Constitution, is to be understood as primarily and mainly applicable to the trial of persons charged with criminal offenses. The right of a party charged with an offense, and thereby put in peril of being deprived of his life, liberty, or property, to be brought face to face with his accusers, and to be tried by his peers, was won and secured in that memorable struggle between freedom and arbitrary government, of which *Magna Charta* is the glorious and appropriate monument. From thence it has flowed down through successive ages, carefully guarded and maintained by the descendants of that people which was represented by the Barons at Runnymede, as a part of the birthright of every freeman; and is now to be

found in the bill of rights prefixed to, or forming a part of, the several constitutions of the States of the American Union. Such being the source from whence it is derived, and such the connection in which it is invariably found, we think it must be admitted that it is intended mainly as a safeguard to life, and personal liberty. When viewed in that light, its importance as a barrier against oppression, and the exercise of arbitrary power, becomes clearly apparent. But when it is claimed that this provision is intended to secure the right to a trial by jury, not only in criminal cases, but also in all cases originating in the disputes and controversies of private individuals, respecting civil injuries, and rights of property, there appears to be a straining of its original meaning and intent; and its importance as a safeguard to personal liberty is no longer perceptible, for, as is well remarked in an able article in the " Federalist," No. 83, " The excellence of the trial by jury in civil cases, appears to depend on circumstances foreign to the preservation of liberty." It may seem superfluous to remark that, in the determination of a vast number of cases, cognizable in courts of equity, admiralty, &c., involving private rights, and controversies respecting property to a very large amount, trial by jury is rarely resorted to, and but seldom expressly required. This circumstance, we think, furnishes strong confirmation of the opinion we have expressed on the point under consideration.

It is contended, and we think justly, by counsel for the plaintiff, that the defendant in order to make good his claim to a trial by jury, even under his own construction of the 6th article of the Constitution, must show that this is a case in which a trial by jury would have been had, previous to the date of the adoption of that instrument. This is indispensable to the maintenance of the defendant's proposition, but he has not shown, and cannot make it appear that such was the case, for the fact is well known to be otherwise. The Constitution granted by the late King, in the year 1840, made no specific provision for a trial by jury, either in criminal or civil cases. The subject was left to be regulated and ascertained by law, and no law was ever passed comprehending controversies like the present among cases to be tried by jury. Up to the date of the enactment of the organic laws, in 1846, questions of private rights of way were generally settled by the respective governors of Islands, always in a summary manner, without a formal trial, and constantly without the aid of a jury. It was provided by Chapter 8th of the old laws, passed at Lahaina, on the 11th of November, 1840, that in cases where it was found desirable to lay out new roads, a committee of three persons should be appointed to assess the damages occasioned thereby to private individuals, and the decision of such "committee," appears to have been final.

We would not be understood as wishing to detract, in the slightest degree, from the acknowledged excellence and expediency of the trial by jury in civil cases generally, for of this we are well convinced, but, in our opinion, the regulation and limitation of the right may safely be left, to a great extent, in every free country, in the hands of the Legislature. And such is indeed the practice, as appears by the great diversity in the modification and extent of the institution of jury trial among the various States whose jurisprudence is based upon the common law of England.

It seems to us that objections of the gravest kind may be urged against the propriety of submitting controversies like the present, to be adjudicated upon according to the " course of the common law." Many of these controversies must involve the joinder of several parties complainant or defendant; the examination of a large number of witnesses; an inspection of the locality where the right of way is claimed; and often more than one adjournment of the proceedings, in order to the attainment of justice. In many cases, too, it may be just and necessary, to couple a judgment affirming the right of way, with conditions to be moulded and adjusted by the peculiar circumstances of each case. It is to be presumed that all these considerations were before the minds of the members of the legislative body when they passed an act confiding the determination of disputes respecting private rights of way to local boards of commissioners, and enacted that, "In settling such controversies, the commissioners shall give such decision, as may in each particular case appear to them to be just and equitable between the parties interested." It was evidently the intention of the legislature to provide a cheap and expeditious mode of adjusting such disputes. Such a mode as would best meet the wants of the poorer class, who suffer most from the evil sought to be remedied, and are at the same time the least able to maintain their rights by litigation.

But, apart from all grounds of propriety or convenience, the question we are now called upon to decide is whether the Act referred to, in which the legislature has clearly expressed its will upon the subject, is in conflict with the Constitution, or not. We are of opinion that it is not. And we think our opinion is completely sustained by the judgments, in analogous cases, of the courts of other states, having a like constitutional provision with that relied upon by the defendant in this instance.

In the Constitution of New York it is declared, that trial by jury, " in all cases in which it has been heretofore used," shall remain inviolate forever. This, it will be observed, is identically the same with the Hawaiian Constitution. In the case of Livingston *vs.* The Mayor of New York, the Court of Errors held the following language: " The mode of ascertaining damages by commissioners," (in cases where private property is taken for the construction of public streets) "had been extensively practiced in this State previous to the adoption of the new constitution. As this was well known to the members of the convention who framed that instrument, and to the people who adopted it, when they directed that private property should not be taken for public use without just compensation, but said nothing as to the manner in which such compensation should be ascertained, it is to be presumed they intended to leave that subject to the discretion of the legislature, to be regulated in such manner as might be prescribed by law."

"The provision of the constitution relative to the trial by jury relates to the trial of issues of fact, in civil and criminal proceedings in courts of justice, and has no relation to cases of this kind. Although damages have frequently been ascertained by the oath of twelve freeholders, both before and since the adoption of the constitution, yet these are not jury trials within the spirit or meaning of that provision." (8 Wendell's Rep., p. 102. See also 10 Wendell's

Rep. p. 458, in the matter of Smith; and 24 Wendell's Rep. p. 337, Lee vs. Tillotson.) In Georgia, where the provision in the constitution securing trial by jury is the same as in that of New York,, it has been adjudged that it did not apply to summary jurisdictions known and in use before the adoption of the constitution. In Mississippi, it was held, in Lewis vs. Garratt, 5 Howard's Rep. 434, that a statute authorizing summary proceedings, by motion against a sheriff and his sureties for official misconduct, is not a violation of the constitution which guarantees the right of trial by jury. (1 Kent's Com. pp. 612, 613, Note c.) In the case of Mountford vs. Hall, in the Supreme Court of Massachusetts, the plaintiff being clerk of a militia company, sued the defendant for the statute penalty for neglect to appear at muster, and obtained a judgment before a justice. Defendant claimed the right to appeal and have a trial by a jury before the Court of Common Pleas, and the case finally went up on error to the Supreme Court. It was said by Justice Sedgwick, in giving judgment, that defendant was not entitled to a jury trial under the provisions of the Constitution of Massachusetts, that, "in all controversies concerning property, and in all suits between two or more persons, except in cases in which it has heretofore been otherwise used and practiced, the parties have a right to trial by jury," on the ground that, before the adoption of the Constitution, there was no law allowing to a party charged with neglect of militia duty a trial by jury. (1 Massachusetts Rep. p. 456.) In the case of Shirley vs. Lunenburg, in the same court, which was a case of removal of paupers from one town to another, one of the errors assigned in the cause was grounded upon the constitutional provision quoted above. In that case the court held that, ' this cause comes within the exception to that general provision of causes which were used and practiced otherwise before the adoption of the Constitution. For, from the settlement of the country, all questions relative to the settlement or removal of paupers were heard and determined by the Courts of General Sessions of the Peace, without the intervention of a jury." (1 Mass. Rep. 379.)

Although the comparative pecuniary magnitude of the interests involved in any judicial proceeding ought not to possess any weight in guiding us to a decision upon the legal rights of a party, yet, we may be allowed to contrast the interests confided to the adjudication of the commissioners of private ways, in ordinary cases, with the large interests sometimes submitted to the award of referees appointed by the court, in cases involving long or complicated accounts or transactions between the parties litigant; or with the important results that may sometimes depend upon the decisions of commissioners in bankruptcy. The late board of commissioners to quiet land titles was endowed by statute with many of the powers of a court of record, and adjudicated upon titles to landed property to an immense amount; deciding incidentally, rights of way, water privileges, and rights of piscary, without the aid of a jury; but no one ever intimated the opinion that the establishment and operation of that board was in conflict with the wholesome principles laid down in the Constitution of 1840.

If we are right in our position that the Act providing for the commissioners of private ways, is not in conflict with the Constitution,

and that the legislature had a perfect right to enact that all such controversies as this, should be submitted to the determination of such commissioners, *a fortiori* it had the power to prescribe that, upon an appeal to this court from a decision of the commissioners, the cause should be heard and determined by the court *in banco*. The regulation of the right of appeal is entirely within legislative discretion in all cases, for the Constitution is altogether silent upon the subject of appeals from any inferior court to the Supreme Court.

Having disposed of these preliminary questions, let us now consider the merits of the cause.

It appears by the evidence that, from time immemorial, there has been a path through Laimi, the land now owned by defendant, on to Waolani, the land of the plaintiff, and extending beyond it, over the mountains, towards the district of Koolaupoko. This path was anciently used as a public way by persons travelling from Koolau to this side of the island; and it is not denied that the plaintiff has, by prescription, a right to a bridle-path over the same tract.

In the year 1839, the plaintiff obtained a lease of Waolani, executed by the late King and the Premier Kekauluohi, which lease contains a clause intended to secure the right of way now claimed; and in 1841 the plaintiff worked and widened the original path into a road, three fathoms wide; built two bridges along the route, and rendered it fit to be travelled with carts, and other vehicles. It is testified by the witness Gandall, that he was employed by Dr. Rooke to do some carting in 1841 or 1842, and that he drove his teams to and from Waolani over the road in question; and that during his residence near the Nuuanu end of the road, it was frequently traversed by carts, and by visitors to Waolani in carriages, between 1841 and 1851. Governor Kekuanaoa testifies that in 1843, the King, chiefs, and others, attended several feasts given by Dr. Rooke at Waolani, and they went there by this same road, some in carriages and others on horseback. It is evident beyond a doubt that Rooke used and enjoyed the road, as a carriage road, without molestation, from the time it was widened, until recently, when it was closed by Nicholson. It further appears in evidence that, in 1849, Dr. Rooke accepted a Royal Patent, in fee simple, of Waolani, in consideration of medical services rendered to the King and Government.

It is contended by the defendant that in July, 1839, the date of the lease of Waolani to Rooke, the King could not lawfully grant a right of way over Laimi without the consent of the Konohiki. This objection would seem to be conclusively answered by the facts in the case, which show that the then Konohiki of Laimi made no objection whatever to Rooke's making the road three fathoms wide, and using it as a cart-road, year after year, up to the time of that Konohiki's death; and his son, Asa Kaeo, who succeeded him, testifies that when he became Konohiki, the road was traveled by everybody who wished to go that way, on horseback or in carriage; that when the land was granted to him in fee simple by the King, in 1848, he understood that he received it subject to the right of way, as before; and that when he sold it to Nicholson, he sold it subject to the same right. We regard this as a strong point in favor of the plaintiff, although not raised by him, for this fact alone, that the Konohiki of Laimi did consent to the grant of the right of way over his land, in favor of the holder of

Waolani, and acquiesced in its use for so long a period, would probably be sufficient, by the common law and usage of this kingdom, to set the matter at rest for ever in favor of the plaintiff, and the succeeding owners of Waolani. Had the King and Premier granted away the whole of Laimi to Dr. Rooke, by writing under seal, on the 30th of July, 1839, with the consent and subsequent continued acquiesence of the Konohiki, we are inclined to think that Rooke's title to the land must have been regarded as unquestionable by the Land Commission.

But let us pass on to the main point raised by the defendant, namely, that although the plaintiff is entitled to a bridle path, yet he has not made out his right to a *cart road*, either by grant or by prescription, for the way granted by the lease was only such as existed then and previously; and he has not used it as a cart road for twenty years, which, it is argued, is indispensable to the creation of a prescriptive right. To this it is replied by the plaintiff, that the words of the grant, which are rather indefinite, may reasonably be construed to import whatever way might be necessary to enable the plaintiff to use and enjoy his land to the best advantage; and that to require twenty years continuous use, to create a prescriptive right of way in this country, would be unreasonable, because that length of time has not yet elapsed since landed property was divided, and the titles to it clearly defined.

We think there is great force in the last argument of plaintiff. To go back twenty years would indeed carry us into the region of chaos, so far as this subject is concerned. And we do not think it is necessary to go back thus far to found a right of way by prescription in this kingdom. It is true that so long a period would be required for that purpose by the common law of England, but the rule has never been adopted in this country, either by custom or by legislative enactment, and we do not feel bound by it. We believe that the adoption of that rule by us, at the present time, would be both unwise and unjust. An uninterrupted use of a way from the time of the organization of the Government, in the year 1846, ought, in our opinion, to be regarded as a good foundation for a right by prescription. In this, as in several other respects, the present circumstances of the Hawaiian nation are anomalous, and we feel that the intention of the Legislature, in its recent enactment, will be best effectuated by laying the foundation of this new branch of our jurisprudence, upon plain principles of equity and justice between man and man, rather than upon the stern rules of law established in older countries, many of which rules are wholly unsuitable to the present condition of our people.

We deem it unnecessary to advert to the other points raised by defendant; and the strong claim by the plaintiff for the right of way of *necessity*, as we are satisfied that he has fairly made out his right to a cart road, upon the grounds already stated and discussed.

Our judgment is, that plaintiff have the right to a road, in the place claimed by him, three fathoms wide, through the land of Laimi, on condition that he maintains a good and substantial gate, at either end of the same, where it enters and leaves said land.

Let decree be entered accordingly. Costs to be equally divided between the parties.